Norbert J. KESSEL and Virginia Kessel, Plaintiffs and Appellants,

v.

WESTERN SAVINGS CREDIT UNION, Defendant and Appellee.

Civ. No. 890371.

Supreme Court of North Dakota.

Nov. 29, 1990.

Robert A. Keogh of Keogh Law Office, Dickinson, for plaintiffs and appellants.

Lawrence A. Dopson of Pearce & Durick, Bismarck, for defendant and appellee.

LEVINE, Justice.

Norbert Kessel and Virginia Kessel appeal from a summary judgment dismissing their wrongful-repossession claim against Western Savings Credit Union (Western). We affirm.

On August 22, 1986, Western repossessed an automobile the Kessels had given as security on a promissory note. The note was in default as the Kessels had not paid the July 15 and August 15 installments. The Kessels brought an action alleging that Western's repossession of their automobile constituted a breach of the peace. The district court granted summary judg-

ment dismissing the Kessels' breach-of-peace claim, but permitted the Kessels to amend their complaint to include claims against Western for wrongful repossession and conversion of the automobile. The Kessels appealed from the dismissal of the breach-of-peace claim and we dismissed that appeal because the record did not contain an adjudication of the wrongful possession and conversion claim. *Kessel v. Western Savings Credit Union*, 434 N.W.2d 356 (N.D.1989). The parties made cross-motions for summary judgment and Kessels appealed from the judgment dismissing their claims for wrongful repossession and conversion.

■ At issue is whether summary judgment was appropriately granted in favor of Western. Summary judgment is a procedural device available for promptly and expeditiously disposing of a controversy without a trial if there is no dispute as to either the material facts or the inferences to be drawn from the undisputed facts, or whenever only a question of law is involved. *Williston Co-op. Credit Union v. Fossum*, 427 N.W.2d 804, 806 (N.D.1988). On appeal from a summary judgment, we view the evidence in the light most favorable to the party against whom the summary judgment was granted. *Id.*

The Kessels argue that summary judgment was inappropriate because it is a disputed material fact whether their course of dealing with Western modified the parties' agreement which gave Western the right, upon default, to take possession of the security without notice.

■ The Kessels are correct in their position that course of dealing is ordinarily a question of fact. *North Dakota Pub. Serv. Comm'n v. Central States Grain, Inc.*, 371 N.W.2d 767, 776 (N.D.1985). However, where the evidence on the course of dealing is such that reasonable minds could draw but one conclusion, the question becomes one of law and summary judgment may be appropriate. *See Belgarde v. Rosenau*, 388 N.W.2d 129, 130 (N.D.1986). Course of dealing is defined as "a sequence of previous conduct between the parties to a particular transaction which is fairly to

be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." NDCC § 41–01–15(1). Course of dealing may be negated by express terms of a contract. NDCC § 41–01–15(4). *Dawn Enter. v. Luna*, 399 N.W.2d 303, 306 (N.D.1987). *See also Thiele v. Security State Bank*, 396 N.W.2d 295 (N.D.1986).

■ Kessels argue that the relevant course of dealing covers all four of the notes they gave Western and their payment history on those notes. We disagree.

The documents submitted to the district court show that the Kessels borrowed money and signed their first note and security agreement on August 24, 1983. A second note was signed on July 1, 1985. The car repossessed by Western was pledged as additional security in the second note. Neither note included a right-to-repossess-without-notice clause or a no-waiver clause.

A third note and security agreement was signed August 16, 1985, calling for monthly payments of interest and the balance by February 15, 1986. There were significant additions to this note and security agreement, including a clause which said:

"WHAT HAPPENS IF YOU ARE IN DEFAULT—When you are in default, the credit union can, without advance notice to you, require immediate payment of what you owe on the loan and take possession of the property. You agree the credit union has the right to take possession of the property without going to court and without giving you advance notice."

In addition, the third note contained a "no waiver" clause:

"No Waiver—The credit union can delay enforcing any of its rights any number of times without losing its rights."

The security agreement portion contained this statement:

"DELAY IN ENFORCING RIGHTS AND CHANGES IN THE AGREEMENT—The credit union can delay enforcing any of its rights under this agreement any number of times without

losing the ability to exercise its rights later. ..."

The final, March 7, 1986, note called for payments on the fifteenth of each month, for thirty-six months. It included default and no-waiver clauses identical to the third note, and provided for a ten-day grace period:

> "Effective Nov 1st 1982 a late payment fee of 5% of your payment, or $10.00 whichever is less, will be charged if your payment is received more than 10 days after its due date."

The Kessels' argument that the relevant course of dealing covers all four notes ignores the addition of the default and no-waiver clauses to the third note and the inclusion of those clauses in the fourth note. This addition unambiguously negates any prior course of dealing. *See Thiele*, 396 N.W.2d at 298. We, therefore, conclude that the relevant course of dealing is that sequence of conduct which follows the inclusion of the default and no-waiver clauses, that is, the dealings between Western and the Kessels on the third and fourth notes.

Kessels argue that the no-waiver clause may be waived and that it was indeed waived by virtue of Western's history of accepting late payments and forgoing defaults. They cite to a number of jurisdictions that hold that a no-waiver clause may be waived. *See, e.g., Smith v. General Fin. Corp.*, 243 Ga. 500, 255 S.E.2d 14 (1979); *Montgomery Enter., Inc. v. Atlantic Nat'l Bk.*, 338 So.2d 1078 (Fla.App. 1976). Western, on the other hand, counters with examples of contrary holdings, *e.g., Johnson v. Central Bank*, 514 So.2d 969 (Ala.1987) (per curiam); *Van Bibber v. Norris*, 275 Ind. 555, 419 N.E.2d 115 (1981), leaning heavily on *Thiele v. Security State Bank*, 396 N.W.2d 295 (N.D.1986), for the proposition that the written contract of the parties is conclusive and its terms may not be varied by the parties' course of conduct. *See also, PCA v. Ista*, 451 N.W.2d 118 (N.D.1990). We need not decide the legal question whether a no-waiver clause may in fact be waived because we hold that, even if it can, the record here does not contain the evidence necessary to raise a reasonable inference of waiver.

A waiver occurs when a person voluntarily and intentionally relinquishes a known right or privilege. *Stenehjem v. Sette*, 240 N.W.2d 596, 600 (N.D.1976). The existence of waiver is ordinarily a question of fact, *see Allen v. Minot Amusement Corp.*, 312 N.W.2d 698, 702 (N.D.1981), and can be found from an unexplained delay in enforcing contractual rights or accepting performance different than that called for by the contract. *Dangerfield v. Markel*, 252 N.W.2d 184, 191 (N.D.1977).

■ Looking to the dealings between the Kessels and Western on the third and fourth notes, the third note was for a six-month term and called for monthly payments of interest with a balloon payment of principal and interest at the end. The Kessels made all of the interest payments. Because they could not pay the loan principal, the final note was negotiated, calling for thirty-six payments of principal and interest. The first payment was due and paid on April 15, followed with timely payments in May and June. Kessels defaulted on the July payment. The August payment was seven days past due when Western repossessed the secured automobile. Reasonable people could not conclude from this course of dealing that Western and Kessels fairly understood that in spite of the no-waiver clause, Western waived its right to repossess without notice. The trial court, therefore, properly granted summary judgment against the Kessels.

We affirm.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.