EDWARD N. SCRUGGS, Retired Circuit Judge.
This is a license fee or license tax case.
The State of Alabama, through the Department of Revenue (the State), made final assessments against the Franklin County Cooperative (the cooperative), totaling $159.48 for the four years of 1980 through 1983, for a store license fee, an annual license tax for selling motor vehicle accessories, and an annual license tax for selling soft drinks. Thereafter, correct procedures were duly followed and a proper appeal was effected by the cooperative to the circuit court. There, the parties filed a written stipulation of facts which provided as follows:
“1. The ... Franklin County Cooperative, Inc., a farmers cooperative (hereinafter referred to as the ‘Cooperative’), is properly organized under Article 3, Chapter 10, Title 2 of the Code of Alabama 1975 and has its principal place of business in Russellville, Franklin County, Alabama. The Cooperative paid the annual permit fee of $10.00 pursuant to Section 2-10-105 Code of Alabama 1975 for the years 1980, 1981, 1982 and 1983 and paid all ad valorem taxes on its real and personal property for the years 1980, 1981, 1982 and 1983.

“4. The Cooperative was formed by ten persons engaged in the production of agricultural products. It was organized to engage in activities in connection with the marketing or selling of the agricultural products of its members or with the harvesting, preserving, drying, processing, canning, packing, storing, handling, shipping, ginning or utilization thereof or in connection with the manufacturing, selling or supplying to its members of machinery, equipment or supplies. Its membership is composed only of persons engaged in the production of agricultural products to be handled by or through the association.
“5. The Cooperative renders services to members of the Cooperative as well as to non-members of the Cooperative; however, it does not deal in the agricultural products of non-members to an amount greater in value than such as are handled by it for members and it does not purchase supplies and equipment for or render farm business service to non-members in an amount greater in value than such as are purchased for or rendered to members.
“6. For the calendar year 1983, the sale of fertilizer by the Cooperative was 38.8% of its total sales; the sale of feed by the Cooperative was 25.1% of its total sales; the sale of seed by the Cooperative was 10.2% of its total sales; the sale of tires by the Cooperative was 1.4% of *122 its total sales; and the sale of miscellaneous items was 24.5% of its total sales. These percentages are representative of the years 1980, 1981, and 1982.
“7. All of the tires and all automotive supplies can be used on pick-up trucks and other commercial vehicles used in hauling farm products to markets and on farm implements such as tractors. Some of the tires and automotive supplies can also be used on vehicles not used in hauling farm products to market. In December, 1983, the Franklin County Cooperative offered to sell 4 radial tires to a Revenue examiner for his 1978 Oldsmobile Cutlass. The examiner was also told that he could purchase a battery for his car.
“8. Most of the miscellaneous items sold by the Cooperative are herbicides and pesticides; however, hardware (consisting of electrical supplies, plumbing supplies and hand tools), animal health care products, lawn mowers, chain saws, garden tillers, and auto supplies (consisting of tubes, batteries and filters) are also sold. All of the miscellaneous items sold by the Cooperative can be used for agricultural purposes. Some of the miscellaneous items sold by the Cooperative can be used for other than agricultural purposes.
“9. The Cooperative maintains a soft drink box. Farmers comprise approximately 85% of its patrons and employees and nonmembers of the Cooperative comprise approximately 15% of its patrons. The Cooperative maintains a soft drink box solely for the convenience of its employees and members; however, the soft drink box is accessible to the general public.
“10. The Cooperative conducts approximately 95% of its business with members (i.e. farmers) and approximately 5% of its business with non-members (i.e. non-farmers). For the purposes of this stipulation, farmers and producers (i.e. persons who produce agricultural products) may be used interchangeably.”
In its final judgment the circuit court found in favor of the cooperative and ascertained that the cooperative was under no obligation, duty, or liability to the State for license taxes for the four years in question. The State timely appealed.
A cooperative may purchase and sell to its members seed, plants, fertilizers, etc. “and any other goods, wares or merchandise necessary or useful in the production ... distribution and marketing of agricultural products.” § 2-10-99(10), Code 1975. A cooperative may render any authorized service to nonmembers, but may not purchase supplies and equipment for nonmembers in an amount greater in value than is purchased for members. § 2-10-99, Code 1975. Nonmembers in the present case constituted only five percent of the cooperative’s customers. The sales to members and nonmembers of tires, automotive supplies, and soft drinks by the cooperative were not ultra vires.
The answer to the issue as to the validity of the final settlement is found in the following code section:
“Any corporation or association organized under this article shall pay to the state the annual permit fee of $10.00 now required by law and shall pay all ad valorem taxes on its real and personal property; except, that all cotton and all other agricultural products which have been raised or produced in the state of Alabama, title to which may be held by such corporation or association in its own right or for the use and benefit of its members, and all goods and articles purchased or acquired by such corporation, whether in or out of the state, for its own use or for the use and benefit of its members for strictly agricultural or farm purposes in this state, shall, so long as held by such corporation or association, be exempt from taxation, nor shall such corporation be liable for any other license or privilege fee or tax for the purpose of engaging in or transacting business or otherwise in this state.”
§ 2-10-105, Code 1975 (emphasis supplied).
Much interesting argument was made by counsel for both parties as to *123 whether the sales of tires and automobile accessories to member and nonmember customers who might not use those products “for strictly agricultural or farm purposes in this state,” as is stated in the code section, subjects the cooperative to payment of the license fees or taxes as imposed in the final assessment. However, it is not essential that we determine whether sales of such items do, or do not, entail that result under the first exemption in section 2-10-105, Code 1975, pertaining to an exemption from taxation. We do not decide what items are exempt from particular taxation provisions under that portion of the code section since we deem the last proviso of that code section (which we have emphasized) to be determinative of the issue before us, for that last provision is specific as to license taxes or license fees, being the exact subject matters of the final assessment. A specific provision of a statute is controlling over a more general provision in the same statute. Green v. Fairfield City Board of Education, 365 So.2d 1217 (Ala.Civ.App.1978), cert. denied, 365 So.2d 1220 (Ala.1979). Where license fees or license taxes are concerned, that last specific provision in section 2-10-105 governs over the preceding more general provision.
An annual “license tax” is imposed upon sellers of motor vehicle accessories by section 40-12-53, Code 1975. Persons engaged in the business of selling soft drinks at retail are required by section 40-12-69, Code 1975, to pay an annual “license tax.” A store “license fee” is imposed by section 40-12-315, Code 1975. However, the last proviso of section 2-10-105 expressly states that an association, such as this cooperative, shall not be liable “for any other license or privilege fee or tax for the purpose of engaging in or transacting business or otherwise in this state.” That is clear enough. Under that exemption, the “other” license fee pertains to the $10 permit fee which is first described in section 2-10-105. Only that $10 permit fee (other than ad valorem taxes) is required of a cooperative in order to do business in this state within the scope of its statutory powers. The imposition of the three license taxes or fees by the state upon the cooperative was effectually prohibited by the last provision of section 2-10-105. The State had no authority to make the final assessment against the cooperative, and the trial court correctly rendered its final judgment in favor of the cooperative.
We affirm.
The foregoing opinion was prepared by Retired Circuit Judge EDWARD N. SCRUGGS while serving on active duty status as a judge of this court under the provisions of section 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.